IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD VEJAR, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> ) <br> D.L. RUNNELS, ) <br> ) <br> Respondent. ) <br>  ) | No. C 05-4428 (PR) <br><br> **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner, a state prisoner proceeding *pro se*, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner makes three claims in his petition. First, he claims the trial court improperly admitted Petitioner's confession because the police obtained the confession during an interrogation in violation of petitioner's *Miranda*[1] rights. Second, Petitioner claims trial counsel failed to negotiate a plea bargain so as to avoid charges punishable by life in prison, which violated Petitioner's Sixth Amendment right to the effective assistance of counsel. Third, Petitioner claims that his conviction of kidnapping and aggravated kidnapping charges violated the Double Jeopardy Clause. For

---

[1] *See Miranda v. Arizona* 384 U.S. 436 (1966).

G:\PRO-SE\MJJ\HC.05\vejar.dny.wpd           1

the following reasons, the Court **denies** Petitioner's petition for a writ of habeas corpus.

## FACTUAL BACKGROUND

The California Court of Appeal summarized the facts in the case as follows:

### The Crimes

The events that led to the criminal charges in this case took place in San Jose on the afternoon of September 19, 2001. Those events included vehicle and foot chases, which ultimately involved four San Jose Police officers, beginning with Officer Lawrence Day.

Officer Day was driving along on Senter Road when he noticed defendant driving a black Honda Accord with one passenger. An all-points bulletin for the vehicle had been issued earlier in the day, following an attempted triple homicide in Menlo Park. Day got behind the Accord and contacted dispatch. After being joined by a second officer in the vicinity, Officer Lloyd, Day activated his red light.

With the two police cars in pursuit, the Accord continued traveling southbound on Senter Road until it reached the corner of Carpenteria. After beginning a right turn on Carpenteria, the Accord stopped in the middle of the intersection. The passenger jumped out and ran west on Carpenteria; Officer Lloyd pursued in his vehicle. Officer Day stayed with defendant, who remained in the driver's seat of the Accord. Gun drawn, Day ordered defendant to put his hands up.

As Officer Day turned to the gathering crowd to tell bystanders to stay back, defendant sped away down Carpenteria in the Accord. Day followed until the car stopped again, about 100 yards away. At that point, defendant got out and ran down a nearby street. Day gave chase on foot.

Officer Day saw defendant approach a white Honda Civic, which drove off quickly with defendant hanging out the front passenger door. With the help of a passerby who offered the use of her minivan, Day followed the white Honda.

The white Honda was being driven by Michelle Bagtas. Her mother, Felicidad Bagtas, was in the passenger seat. The car had been stopped at an intersection when defendant approached, opened the passenger door, and ordered the daughter to drive. Defendant told the two women that he had a gun, though neither saw one. Afraid for their safety, the daughter drove as ordered. As she drove, defendant was on the ledge of the passenger door frame, trying to put his feet on the seat, and hanging onto the side and top of the car. Both women were yelling at defendant to get out, and the mother was struggling with him and pushing him away. Defendant never got all the way inside the car.

Eventually, the white Honda stopped and defendant ordered the two women out. They complied. Defendant then ran to the driver's side of the car, got in, and took off in the car.

At that point, a third officer took up the chase. Officer John Esparza pursued defendant in the white Honda, while Officer Day remained with the two women. Esparza briefly lost sight of the white Honda, but found it again, parked near Coyote Creek in Hellyer Park with the driver's door open. Esparza heard a noise from the creek but did not see defendant.

A fourth San Jose Police Officer, Todd Nielsen, saw defendant coming out of the creek area. Nielsen watched as defendant tried to get into a brown Jaguar, which was stopped a few yards away. Nielsen identified himself, pulled his gun, and ordered defendant out of the Jaguar. Defendant complied. The driver of the Jaguar told Nielsen that he was just giving defendant a ride, then left without identifying himself.

Nielsen arrested defendant. Defendant was taken to the police station to be questioned.

### The Interrogations

That evening, officers from two different law enforcement agencies questioned defendant. The interrogations took place in an interview room at the San Jose Police Department.

First, Menlo Park Police Sergeant Paul Kunkel questioned defendant. The subject of that interview was an attempted triple homicide, which had taken place earlier that day in Menlo Park, in San Mateo County.

Prior to questioning defendant, Kunkel advised him of his *Miranda* rights. Defendant acknowledged that he understood those rights. Defendant was handcuffed to the table during the interview, and Kunkel did not ask him to sign a waiver form. Nor did Kunkel specifically ask defendant if he agreed to waive his *Miranda* rights.

Kunkel questioned defendant for about 30 minutes, took a break, and then returned for about 15 minutes to clarify portions of defendant's statements. Kunkel did not reread the *Miranda* warnings to defendant prior to the second part of the interview. Defendant was evasive during Kunkel's questioning, but never invoked his rights to silence or to an attorney. Kunkel concluded his interview with defendant.

Defendant was then turned over to San Jose Police Sergeant Mike McLaren for questioning. Officer Day was with him. That interview began shortly after Kunkel's interview had ended, and it lasted some 15 to 20 minutes. During the interview, Sergeant McLaren asked defendant about the events in San Jose.

Sergeant McLaren did not give defendant a *Miranda* warning. But he did ask defendant "if he remembered the rights that had been explained to him by the Menlo Park PD Detective [Sergeant Kunkel]." Defendant said that he did remember them. McLaren then asked defendant if he was willing to talk to him about the San Jose case, and defendant "willingly" talked to him.

### PROCEDURAL BACKGROUND

In September 2002, an amended information was filed charging Petitioner with four

felonies: two counts of kidnapping during a carjacking (§ 209.5 [counts 1 and 3] ), and two counts of kidnapping to commit robbery (§ 209, subd. (b)(1) [counts 2 and 4] ).  The amended information also alleged Petitioner's personal use of a firearm.

In November 2002 a Santa Clara County Superior Court jury convicted Petitioner of kidnapping the two victims during a carjacking (counts 1 and 3).  The jury found Petitioner not guilty of kidnapping to commit robbery (counts 2 and 4), but found defendant guilty of the lesser-included charges of simple kidnapping and robbery on those two counts.  The jury found the allegations of Petitioner's personal use of a firearm untrue.

On counts 1 and 3, the court sentenced Petitioner to two consecutive terms of life in prison. On counts 2 and 4, the court imposed the mid-term sentences of three years for the robbery conviction and five years for the simple kidnapping conviction.  The court stayed the determinate sentences on those counts.

Petitioner brought a timely appeal to the Court of Appeal.  The Court of Appeal found that Petitioner's conviction of aggravated kidnapping for carjacking necessarily included the lesser offense of simple kidnapping.  Therefore, the Court of Appeal directed the trial court to dismiss defendant's conviction for simple kidnapping (count 2).  The Court of Appeal affirmed the convictions for  kidnapping the two victims during a carjacking (counts 1 and 3), and robbery (count 4).

Petitioner filed a petition for review with the Supreme Court of California on June 29, 2004.  The Supreme Court of California denied the petition for review in August 2004. Petitioner filed a timely petition for a writ of habeas corpus with this Court on October 31, 2005.

**DISCUSSION**

**A.     Standard of Review**

This Court may entertain a petition for a writ of habeas corpus submitted by an individual in custody pursuant to a state court judgment only if the custody violates the United States Constitution, laws or treaties.  28 U.S.C. § 2254(a) (2005) (hereinafter "AEDPA"); *Rose v. Hodges*, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2005); *Williams v. Taylor*, 529 U.S. 362, 402-403 (2000).

A state court decision qualifies as "contrary to" federal law if it directly contravenes a Supreme Court decision on a question of law, or reaches a conclusion converse to a Supreme Court decision with materially indistinguishable facts. *Id*. at 413. A state court decision involves an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412-413. In determining whether a state court's decision contravenes or unreasonably applies clearly established federal law, a federal court examines the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). In this case, the highest state court to issue a reasoned opinion was the California Court of Appeal. The Court now turns to Petitioner's claims.

**B.    Petitioner's Claims**

    **1.    Miranda Violation**.

Petitioner claims that his statements to Sergeant McLaren, of the Santa Clara Police Department, regarding the present crimes are inadmissible because the only *Miranda* warning he received was a deficient warning earlier in the interrogation by Sergeant Kunkel of the Menlo Park Police Department, who had been questioning Petitioner about a separate crime. Petitioner contends that Sergeant Kunkel's *Miranda* warning was deficient because Sergeant Kunkel did not request a verbal or written waiver of Petitioner's *Miranda* rights. Petitioner also argues that when Sergeant McLaren subsequently interrogated him about the instant crimes, Sergeant McLaren gave no separate *Miranda* warning and simply inquired if

1  Petitioner remembered the *Miranda* warning from Sergeant Kunkel.[2]

2      *Miranda* requires that a person subjected to custodial interrogation be advised that
3  he has the right to remain silent, that statements made can be used against him, that he has
4  the right to counsel, and that he has the right to have counsel appointed. *See Miranda v.*
5  *Arizona*, 384 U.S. 436, 444 (1966). These warnings must precede any custodial
6  interrogation, which occurs whenever law enforcement officers question a person after
7  taking that person into custody or otherwise significantly deprive a person of freedom of
8  action. *Id.*[3]

9      Once properly advised of his rights, an accused may waive them voluntarily,
10 knowingly and intelligently. *See Miranda*, 384 U.S. at 475. A valid waiver of *Miranda*
11 rights depends upon the totality of the circumstances, including the background, experience
12 and conduct of the defendant. *See United States v. Bernard S.*, 795 F.2d 749, 751 (9th Cir.
13 1986). The waiver need not be express as long so long as the totality of the circumstances
14 indicates that the waiver was knowing and voluntary. *North Carolina v. Butler*, 441 U.S.
15 369, 373 (1979); *Juan H.*, 408 F.3d at 1271; *see, e.g., Younger*, 398 F.3d at 1186 (finding

---

[2] Petitioner has filed a declaration to augment the record and presents evidence for the Court to review that was not previously submitted in state court proceedings. In the declaration, Petitioner submits a transcript (Exhibit (" Ex.") 1) of the first interrogation conducted by Sergeant Kunkel alleging the transcript shows that there was an improper advisement of *Miranda* rights. Petitioner further alleges the transcript shows Petitioner invoked his right to silence, and that the interrogating officers disregarded Petitioner invoking his right and continued questioning him in violation of *Miranda*. Petitioner requests the Court to conduct an evidentiary hearing concerning all tape recordings or transcripts of both interrogations to determine whether the statements introduced at trial were accurately recounted to the jury, as well as to determine whether proper procedural safeguards were followed. Although Petitioner has not provided a cognizable legal theory supporting why the Court may properly consider the transcript evidence at this stage, the Court assumes for the purposes of this analysis that the transcript can properly be considered, and analyzes Petitioner's claims with consideration of the contents thereof. No evidentiary hearing is necessary because even considering the transcript, for the reasons discussed below, Petitioner is not entitled to relief on this claim.

[3] The court need not address whether Petitioner made statements during custodial interrogation because there is no dispute that Petitioner was in custody at the time of questioning.

1  implied waiver based on evidence that after defendant was advised, but before questioning,
2  he made a spontaneous statement and responded to further questions without reference to
3  counsel).  There is a presumption against waiver. *United States v. Garibay*, 143 F.3d 534,
4  536 (9th Cir. 1998).  To satisfy its burden, the government must introduce sufficient
5  evidence to establish that under the totality of the circumstances, the defendant was aware
6  of "the nature of the right being abandoned and the consequences of the decision to
7  abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  A showing that the defendant
8  knew his rights generally is sufficient to establish that he knowingly and intelligently
9  waived them.  *See, e.g., Paulino v. Castro*, 371 F.3d 1083, 1086-87 (9th Cir. 2004)
10 (statement that suspect understood his rights and wanted to talk to officer sufficient to
11 waive right to counsel); *United States v. Doe*, 60 F.3d 544, 546 (9th Cir. 1995) (officer's
12 unrebutted testimony established by preponderance of evidence that juvenile knowingly
13 and voluntarily waived his *Miranda* rights).  On the other hand, if a suspect indicates in any
14 manner during questioning that he wishes to remain silent, interrogation must cease and any
15 statement obtained thereafter is considered the product of compulsion. *Miranda*, 384 U.S.
16 at 473-74.

17        Whether a statement is voluntarily made may depend upon whether there has been a
18 lapse of time and/or change in questioners between the *Miranda* warning and the
19 incriminating statement. Courts generally reject a per se rule as to when a suspect must be
20 readvised of his rights after the passage of time or a change in questioners.  *See  United*
21 *States v. Andaverde*, 64 F.3d 1305, 1311 (9th Cir. 1995).

22        Here, Petitioner makes three *Miranda*-related arguments.  First , he contends the
23 transcript shows the *Miranda* warning was deficient because Sergeant Kunkel did not
24 request a verbal or written waiver of Petitioner's *Miranda* rights.  As set forth above, a
25 waiver of *Miranda* rights need not be express; the waiver can be implied so long as the
26 totality of the circumstances indicates that the waiver was knowing and voluntary. *Butler*,
27 441 U.S. at 373.  After an evidentiary hearing on Petitioner's motion to suppress, the trial
28 court found that Petitioner was given his *Miranda* advisements by Menlo Park Police

Sergeant Kunkel, and that Petitioner knowingly, voluntarily and intelligently waived his *Miranda* rights during the course of the interview with Sergeant Kunkel. The Court of Appeal affirmed the trial court's finding.

To begin with, the transcript indicates that Petitioner was given a *Miranda* warning: a "detective" asked Petitioner, "[w]e've already read you your *Miranda* rights?" to which Petitioner replied "yes." ( Pet. Ex.1 at 1:14-16.) Furthermore, Petitioner impliedly waived his *Miranda* rights because, after acknowledging those rights, he continued to freely converse with Sergeant Kunkel. (See Pet. Ex. 1.) In finding an implied waiver, the state courts also cited Petitioner's extensive criminal record. His criminal record does tend to indicate the waiver was knowing and voluntary because in that he had extensive previous experience with the police and their interrogations. Based on the foregoing circumstances, the state courts reasonably found that petitioner was read his *Miranda* rights, and that he made an implied, knowing and voluntary waiver of those rights. Accordingly, petitioner's first *Miranda* argument does not support his request for habeas relief.

Petitioner's second *Miranda* argument is that the transcript shows he invoked his right to silence and that the police violated his *Miranda* rights by continuing to question him. The Court need not address this issue because the instances in which Petitioner contends he invoked his right to remain silent all occurred during his questioning, by Menlo Park Police Sergeant Kunkel, about other crimes, and not during his questioning by San Jose Police Sergeant McLaren, about the crimes at issue in this case. (See Pet. Ex. 1 at 7:23-25, 13: 1, 17:9.)[4] Petitioner has not alleged that he invoked his right to silence during the later questioning by San Jose Police Sergeant McLaren, during which Petitioner made the statements that were admitted at trial.

Third, Petitioner argues that Sergeant McLaren did not give him a new and separate *Miranda* warning from the warning he had received during the first interview by Sergeant

---

[4] In any event, the Court notes that the transcript shows that Petitioner continued to talk with the police even after he made the statements that he contends constituted an invocation of his right to silence. (Pet. Ex. 1. 8:1-5, 13:1-4; 17.)

G:\PRO-SE\MJJ\HC.05\vejar.dny.wpd               8

Kunkel. According to Petitioner, a new *Miranda* warning was required in the second interview because he was interviewed by a different officer about different crimes. The trial court found that Petitioner voluntarily waived his right to silence in the first interview, and that the second interview was reasonably contemporaneous with the prior knowing and intelligent waiver so as not to require a second warning. The record shows that the second interview began approximately ten minutes after the first interview. In *United States v. Andaverde*, the court found a voluntary waiver carried over after defendant was moved into a different room and questioned by a new interrogator. 64 F.3d 1305, 1311 (9th Cir. 1995). The *Andaverde* court also found that a one day interval between voluntary waiver and a second questioning is reasonable. *Id*. Moreover, a significant fact in this case is that the record shows that before beginning the second interview, Sergeant McLaren asked Petitioner if he remembered his *Miranda* rights, and Petitioner replied that he did. Finally, petitioner cites no authority, and the Court is aware of none, *requiring* that a person in custody be given a new *Miranda* warning each time the person is interviewed about a different crime and/or by a different officer.

In sum, the state court reasonably concluded that Petitioner voluntarily waived his right to remain silent, that any invocation of that right occurred during the first interview from which no statements were admitted at trial, and that there was no necessity for a second *Miranda* warning prior to the second interview. Accordingly, habeas relief is not warranted on this claim.

**2.     Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel from his first trial counsel, Dennis Lempert. Petitioner asserts Mr. Lempert failed to negotiate a plea bargain which would have prevented Petitioner from being charged with crimes punishable by life in prison.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The

benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id*. In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland*, 466 U.S. at 687-88. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.  It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even establish incompetence under the first prong. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

On September 21, 2001, a six-count criminal complaint was filed against Petitioner. The charges included carjacking (count 1), kidnapping of Michelle Bagtas (count 2), kidnapping of Felicidad Bagtas (count 3), reckless driving (count 4),  attempted carjacking (count 5) , and resisting arrest (count 6).  All offenses as charged carried a determinate sentence.  At the preliminary hearing, on January 2, 2002, the prosecutor moved to dismiss the charges of attempted carjacking (of a brown Jaguar), reckless driving, and resisting arrest.  The court granted the motion.  Following the preliminary hearing, Mr. Lempert was replaced by a public defender as petitioner's counsel.

On January 11, 2002 the District Attorney filed a three-count information charging

Petitioner with the felonies of carjacking, kidnapping to commit robbery, and kidnapping. The new charge of kidnapping to commit robbery carried a possible life sentence. In September 2002, an amended information was filed charging Petitioner with four felonies: two counts of kidnapping during a carjacking (§ 209.5 [counts 1 and 3] ), and two counts of kidnapping to commit robbery (§ 209, subd. (b)(1) [counts 2 and 4] ). The amended information also alleged defendant's personal use of a firearm. Each of the four felony counts carried a possible life sentence.

Here, the trial court conducted a hearing to address Petitioner's allegation that Mr. Lempert failed to negotiate a plea bargain which would have prevented Petitioner from ultimately being charged with crimes punishable by life in prison. At the hearing, Mr. Lempert offered two major tactical reasons for not recommending that defendant "plead to the sheet" and admit all charges in the original complaint.[5] First, Mr. Lempert testified that he asked the district attorney to dismiss several of the counts because he did not believe the counts provable, specifically mentioning the attempted carjacking of the brown Jaguar (count 4). Second, Mr. Lempert explained that he had been retained by Petitioner's mother to try to settle both the charges against Petitioner in San Mateo County, in which Petitioner was facing multiple attempted murder charges, and the Santa Clara case together. Mr. Lempert testified that his objective was to settle both cases, with his major concern being the more serious charges of attempted murder in the San Mateo County case, and that pleading to the sheet to the Santa Clara charges could have adverse consequences because that fact could have been used against Petitioner in the San Mateo case. The trail court concluded that Mr. Lempert made a reasonable tactical decision based on a reasonable assessment that there was insufficient evidence to prove all the initial charges against Petitioner, and in consideration of the adverse affect that pleading guilty would have on the attempted murder charges pending against petitioner in San Mateo County.

Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases

---

[5]Mr. Lempert and petitioner's other trial attorneys all testified at the hearing.

trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances. *See Sanders*, 21 F.3d at 1456.[6]  Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir. 1994).  The record amply supports the state courts' finding that Mr. Lempert engaged in reasonable trial tactics in this case.  First, the fact that the prosecutor moved to dismiss the charges of attempted carjacking, reckless driving, and resisting arrest at the preliminary hearing shows that Mr. Lempert was correct in his assessment that the initial charges were not supported by sufficient evidence.  Second, Mr. Lempert's concern that pleading to the sheet on the Santa Clara charges could have adverse consequences on the attempted murder charges in San Mateo County was well-founded.  Petitioner's guilty plea to the Santa Clara charges could have been portrayed as Petitioner's admission to fleeing from officers who wanted to speak to him based on the all points bulletin for the car Petitioner was driving.  In addition, Petitioner's convictions on the Santa Clara County charges would be used to impeach him if he testified at the San Mateo trial.

While Petitioner requests the Court to consider Mr. Lempert's decision to not plead to the sheet as falling below an objective standard of reasonableness because doing so may have prevented Petitioner with being charged with crimes carrying indeterminate sentences, the relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170 (9th Cir. 1998).  For the reasons described, Mr. Lempert's made reasonable choices under the circumstances, and the Court need not address the prejudice prong of the *Strickland* analysis.  The state courts' rejection of Petitioner's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of federal law, and Petitioner is not

---

[6] Whether counsel's actions were indeed tactical is a question of fact considered under 28 U.S.C. § 2254(d)(2); whether those actions were reasonable is a question of law considered under 28 U.S.C. § 2254(d)(1). *Edwards v. LaMarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).

entitled to habeas relief on this claim.

3. **Double Jeopardy**

Petitioner claims that he should not have been convicted of both kidnapping for carjacking and simple kidnapping because both arise from the same course of conduct, and that a new trial is required to allow a jury to determine whether he is guilty of simple kidnapping or aggravated kidnapping charges.

California Penal code § 207 defines simple kidnapping as:

> (a) Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping.

West's Ann.Cal.Penal Code § 207

California Penal Code § 209.5 defines kidnapping during carjacking as:

> (a) Any person who, during the commission of a carjacking and in order to facilitate the commission of the carjacking, kidnaps another person who is not a principal in the commission of the carjacking shall be punished by imprisonment in the state prison for life with the possibility of parole.
> (b) This section shall only apply if the movement of the victim is beyond that merely incidental to the commission of the carjacking, the victim is moved a substantial distance from the vicinity of the carjacking, and the movement of the victim increases the risk of harm to the victim over and above that necessarily present in the crime of carjacking itself.

West's Ann.Cal.Penal Code § 209.5

The trial court sentenced Petitioner to five years for each simple kidnapping conviction (counts 2 and 4), and pursuant to penal code section 654 stayed the execution of the sentences. On appeal, however, the Court of Appeal found that the simple kidnapping convictions were necessarily included in the convictions for kidnapping during the commission of a carjacking (counts 1 and 3). The Court of Appeal directed the trial court to dismiss the convictions for simple kidnapping. Because Petitioner has already obtained relief on this claim from the California Court of Appeal, which dismissed the simple kidnapping convictions, his rights under the Double Jeopardy Clause have not been violated and he is not entitled to habeas relief on this claim.

     The Court need not address Petitioner's claim that the Double Jeopardy Clause requires a new trial to allow a jury to determine whether he is guilty of simple kidnapping or aggravated kidnapping charges. The Double Jeopardy Clause prohibits a second prosecution for the same offense after acquittal or conviction, and also prohibits multiple punishments for the same offense. *See Witte v. United States*, 515 U.S. 389, 395-96. There is no contention that Petitioner is subject to successive prosecution, and Petitioner has received relief for multiple punishments for the same offense. Therefore, Petitioner has presented no basis for obtaining a new trial based on a double jeopardy violation.

## CONCLUSION

     For the foregoing reasons, the Court **denies** Petitioner's writ of habeas corpus. The Clerk shall close the file and terminate all pending motions.

IT IS SO ORDERED.

DATED:  10/30/07

                                            MARTIN J. JENKINS
                                            United States District Judge